# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTHONY M.A. WEST,
    Plaintiff,

v.

UNITED STATES OF AMERICA, *et al.*,
    Defendants.

CIVIL ACTION NO. 19-CV-0147

FILED
JAN 22 2019
KATE BARKMAN, Clerk
By_____ Dep. Clerk

## MEMORANDUM

SÁNCHEZ, C.J.                                                                                                                                   JANUARY 22, 2019

Plaintiff Anthony M.A. West brings this civil action against: (1) the United States of America; (2) Matthew G. Whitaker in his official capacity as Acting Attorney General of the United States; (3) Daniel R. Coats, in his official capacity as Director of National Intelligence; (4) Christopher A. Wray, in his official capacity as Director of the Federal Bureau of Investigation; (5) Brandin Filkosky, in her individual and official capacities as an officer of Pennsylvania's Department of Labor and Industry; (6) Abolade Akomolede, in his individual and official capacities as a member of the Unemployment Compensation Board of Review of Pennsylvania's Department of Labor and Industry; (7) Megan J. Brennan, in her official capacity as Postmaster General; and (8) Unknown Agents "in their official and/or individual capacities, as the case may be." West's Complaint essentially alleges that the government has ruined his life by subjecting him to surveillance, precluding him from obtaining employment, and subjecting him to daily indignities in society. West seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant West leave to proceed *in forma pauperis*, and dismiss his Complaint.

1

## I. FACTS[1]

West's Complaint and exhibits total 460 pages. The Court has reviewed his submission in its entirety but will not recount all of his allegations here as they are lengthy and detailed. The gist of West's Complaint is that, as a result of a vast government conspiracy carried out by means of surveillance and blacklisting, he was terminated from his job as a software engineer, he has not been able to obtain unemployment compensation benefits or find other employment as a software engineer, and he has generally been treated unfairly and/or singled out by others in society in various respects. The Complaint details West's professional troubles and personal frustrations and ties those incidents to a conclusion that "the federal government has been inflicting on [him] a covert kind of civil death." (Compl. at 8, ¶ 12.)

West alleges that his "persecution" began in 2001 at Cornell University, where he "was mobbed and thereafter complained about it, made anti-war statements, spoke out about political issues, and tried to sue." (Id. at 9, ¶ 15.) The basis for this contention is West's allegation that when was a graduate student in computer science at Cornell University, former colleagues of his with whom he had a falling out essentially turned everyone against him, which is what he refers to as "mobbing." West also alleges there was a racial component to the social and professional abuse he suffered during his time at Cornell. He adds that his family members have been abusive and that they have on occasion let slip that he is under government surveillance.[2]

---

[1] The following facts are taken from the Complaint and the exhibits attached to the Complaint.

[2] For example, West contends that in December of 2012, his "biological mother let slip in the heat of passion that [he has] been under surveillance for 'ten years' on the pretext that [he is] somehow mentally ill." (Compl. at 8, ¶ 13 (footnote omitted).) West also contends that in 2013, two of his aunts independently confirmed that he was "under a defamatory kind of surveillance" that "poison[ed]" people against him "as far away as Europe." (Id.)

2

In 2015, West was hired by Greenphire, Inc. as a software engineer. "Within a few weeks [West] began having controversial thoughts in private, and immediately thereafter, Greenphire took opportunities away from [him] (*e.g.*, developing for the frontend, and contributing to the design of the extensions to the system), and the Philadelphia police entered [his] house in [his] absence, on a pretext that made no sense." (*Id.* at 21, ¶ 86 (footnote omitted).) West alleges that in 2016, "Greenphire's hostility toward [him] finally became demonstrable when it called [him] into a meeting to blame [him] for a problem and declined to apologize to [him] when [he] showed that it was someone else's fault." (*Id.* at 21, ¶ 87 (footnotes omitted).) The situation at work continued to get worse for West, and he was ultimately put on a performance improvement plan on June 9, 2017, which he alleges intended to punish him for speaking out about the regular slights at work and the fact that he was underutilized. West emailed the CEO of the company to complain about the unfair treatment. He was subsequently terminated on June 13, 2017.

West thereafter submitted an application to the Pennsylvania Department of Labor and Industry for unemployment compensation benefits. However, he did not receive those benefits because Greenphire allegedly lied about the circumstances surrounding his termination and the Pennsylvania Department of Labor systematically ignored his side of the story. On May 1, 2018, West received a call from Brandin Filkosky, an employee of the Department of Labor and Industry, about his application. Specifically, Filkosky sought information about the reason West was terminated. West indicates that she spoke to him in a "not friendly" tone. (*Id.* at 25, ¶ 109.) West further alleges that Filkosky deceived him on a follow up phone call and ultimately made incorrect determinations about his termination from Greenphire. According to West, those determinations unjustly precluded him from receiving benefits. Exhibits attached to the

Complaint reflect the agency's conclusion that West was ineligible for unemployment compensation because he was fired for insubordination.

West appealed Filkosky's denial of benefits determination and was notified of a hearing on his appeal before Abolade Akomolede, a member of the Department of Labor and Industry's Unemployment Compensation Board of Review, scheduled for June 27th. West responded to the notice with a letter expressing his belief that a hearing would be inappropriate because the process had been corrupted. Akomolede held the hearing in his absence and upheld Filkosky's denial of benefits and without acknowledging West's letter.

West later learned that although he mailed his letter on Friday, June 22 by expedited mail so that it would arrive on Monday at the latest, the letter did not arrive until June 27th after the hearing was scheduled to take place. When West investigated, he learned that "the delay was due not to one irregular event but, remarkably, to many, some of which even involve retrograde motion." (*Id.* at 35, ¶ 169.) West wrote a letter to the Postmaster General inquiring about the delay and noting a "recurrent problem with return receipts" but he did not receive a response. (*Id.*) A copy of the letter is attached to the Complaint as an exhibit. West concludes that the state agency was biased against him and that the inconsistencies and errors in the rulings against him, as well as the post office's handling of his letter, constitute additional evidence that the government is persecuting him.

West seeks a career as a software engineer and has applied for numerous jobs in the field before, during, and after his employment with Greenphire. West alleges that he is more than qualified to be a software engineer and that his cover letter is enthusiastic and inviting. Nevertheless, he has not been able to secure employment as a software engineer despite having applied for many jobs and despite having received interviews for some of those jobs. When

4

West attempted to follow up on rejections, he either did not receive a reply or the replies he received were, in his mind, inadequate and insufficient. He also alleges that Greenphire and other companies have attempted to direct him into software architecture even though he would prefer to be a software engineer. The Complaint indicates that West's inability to obtain employment as a software engineer and the non-responses or confusing responses of prospective employers stems from government surveillance and blacklisting. West also alleges that some employers engaged in a pretense of interviewing him or emailing with him to create the false appearance that he was not blacklisted.

In support of his conspiracy claims, West adds that attorneys have attempted to thwart him from suing the government and have declined to represent him in connection with this case. When he sought legal help from attorneys or civil rights organizations regarding his claims of government surveillance, they repeatedly turned him away. For example, West alleges that "[t]he lawyers [he] called or emailed, particularly around July 2018, either refused to help [him], sought to persuade [him] that sovereign immunity obviated claims against Pennsylvania's government, [or] sought to veer [him] away from a civil rights suit and toward a suit in employment law." (*Id.* at 59, ¶ 321.) Some of the individuals he contacted even suggested that he consult with a mental health professional.

West also points to what he describes as "improbable, incongruous, [and] disturbing" occurrences over the course of several years, which illustrate that he is treated differently from others who might be in the same place or situation in general society. (*Id.* at 70, § 5.9.) For instance, an officer of the Philadelphia Police Department entered West's home in 2015, and he was told the reason for the visit was that his parents asked police to check on him out of concern for his health. West alleges that reason was fabricated and that the real reason for the intrusion

was that "the police have the technology to detect" private feelings, such as the unhappiness West felt about Greenphire, in the days preceding the incident. (*Id.* at 71, ¶ 386.) On September 1, 2018, West alleges that he was "singled out" by a barista at a coffee shop, who tapped him on the shoulder, showed him a credit card, and asked if the card belonged to him. (*Id.* at 73, ¶ 401.) West believes that "the barista accosted [him] for the sole purpose of creating the appearance that she does not already know who [he is], *i.e.*, that [he is] not defamed to her by watchlist and surveillance." (*Id.* at 73, ¶ 403.) West details several other incidents, and the Court will not recount all of them here.

Based on the above and other similar allegations, West initiated this lawsuit against the federal government and various government actors. His Complaint makes clear that he seeks to pursue this matter as a civil rights case. Accordingly, the Court will construe the Complaint as raising constitutional claims pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). It also appears that West seeks to pursue violations of criminal law. As relief, West "ask[s] the Court to order the government to stop destroying [his] life, to remove [him] from any 'databases' (blacklists), and to tell [him] when [he] was first put on one and why." (*Id.* at 75-76, § 6 (footnote omitted).) West also provides what he has characterized as "innovative solutions" to remedy the "[c]overt civil death" he has experienced, which include but are not limited to: (1) entitlement to all audio and video surveillance recordings for review; (2) "a restoration of the *experiences, i.e.*, the memories of which he has been bereft" (which West alleges can be "implanted in [him] by the techniques of brain science") and the implantation of his own memories into the brains of his enemies "so that they can live the rest of their lives in horror"; (3) the "*fruits* of the experiences of which he has been bereft," for example, publications and software that should be republished under his name instead of the

names of his enemies; and (4) assorted suggestions that would restore prestige, wealth, and recognition to West and punish those who have harmed him. (*Id.* at 76-81, § 6.1.) West also seeks damages, possibly in the amount of "billions or trillions of dollars," and he provides various means of calculating and assessing damages. (*Id.* at 83.)

## II. STANDARD OF REVIEW

The Court will grant West leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, it is frivolous or fails to state a claim. A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). It is legally baseless if "based on an indisputably meritless legal theory," *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995), and factually baseless "when the facts alleged rise to the level of the irrational or the wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Moreover, "if the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). As West is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

West may not proceed on his claims because his allegations are wholly incredible and lack a basis in fact. As discussed above, he attributes the loss of his job, his inability to obtain unemployment compensation benefits, and other matters big and small over the course of several decades to a conclusion that the government has placed him under physical and mental surveillance. However, West's attribution of his personal and professional frustrations to a vast government conspiracy carried out by surveillance of his thoughts, among other means, are

7

wholly incredible. *See, e.g., Khalil v. United States*, No. 17CV2652JFBSIL, 2018 WL 443343, at *4 (E.D.N.Y. Jan. 12, 2018) (finding plaintiff's allegations "wholly incredible" when he alleged "a broad conspiracy involving surveillance of and interference with his life by the United States and various government actors"); *Czmus v. Meehan*, No. CIV.A. 08-1675, 2008 WL 4361046, at *1 (E.D. Pa. Sept. 24, 2008) (dismissing complaint as factually baseless where "in short, many of the facts alleged concern a far-reaching conspiracy against Plaintiff by the Department of Homeland Security"). West's suggestions for relief are also implausible, for example, his suggestion that the Court could fashion relief in the form of altering memories.

The Court's conclusion that West's allegations are fantastic is not intended to minimize West's understandable frustration with his inability to find steady employment in his chosen profession or his disappointment with how others have treated him throughout the years. Nevertheless, due to "the vast power, scope, and complication of the whole alleged conspiracy," which suggests that every adverse event in West's life is attributable to government interference, the Court will dismiss the Complaint in its entirely as lacking a basis in fact.[3] *Caesar v. Megamillion Biggame Lottery*, 193 F. App'x 119, 121 (3d Cir. 2006) (per curiam).

---

[3] There are other defects in West's claims. For instance, to the extent West is seeking the initiation or prosecution of criminal charges against those who wronged him, there is no legal basis for him to do so through this lawsuit. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (observing that a "private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 636 (E.D. Pa. 2014) ("[I]t is today beyond all reasonable doubt that the prosecution of violations of federal criminal law in federal court is a function of the federal government, not private parties, and federal courts lack the power to direct the filing of criminal charges[.]" (citations, quotations, and alteration omitted)), *aff'd*, 572 F. App'x 68 (3d Cir. 2014) (per curiam). Additionally, sovereign immunity bars West's claims against the United States and his damages claims against federal officials in their official capacities. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *Treasurer of New Jersey v. U.S. Dep't of Treasury*, 684 F.3d 382, 395 (3d Cir. 2012) ("Without a waiver of sovereign immunity, a court is without subject matter jurisdiction over claims against federal agencies or officials in their official capacities."). West also cannot proceed on his damages

8

## IV. CONCLUSION

For the foregoing reasons, the Court will grant West leave to proceed *in forma pauperis* and dismiss his Complaint. West will not be permitted to file an amended complaint because the Court concludes that amendment would be futile. An appropriate Order follows.

**BY THE COURT:**

_____
JUAN R. SANCHEZ, C.J.

---

claims against Filkosky and Akomolede in their official capacities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989) (state official acting in their official capacities are not persons subject to liability under 42 U.S.C. § 1983). The Court will not address any additional defects in light of the dismissal of the Complaint for lack of a factual basis.